**E-FILED on**   4-17-06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM McGREGOR,<br><br>    Defendant. | No. CR-05-00403 RMW<br><br>ORDER DENYING MOTION TO SUPPRESS EVIDENCE<br><br>**[Re Docket Nos. 18, 21, 22, 25]** |

    The motion of defendant William McGregor to suppress evidence (a silencer and an explosive device) seized by law enforcement on May 20, 2005 in the warrantless search of his truck was submitted for decision following an evidentiary hearing. The court has considered the moving and responding papers and defendant's supplemental submission, the evidence received at the hearing, and the arguments of counsel. For the reasons set forth below, the court denies the defendant's motion.

## I. FACTS

**A. Mr. McGregor's Arrest**

    On the afternoon of May 20, 2005, Jean McGregor was awakened by her intoxicated and belligerent husband, William McGregor, at their shared apartment. The couple argued, Mr.

1  McGregor threw a book at Mrs. McGregor, and each spouse left the residence at least once in
2  unsuccessful attempts to defuse the situation. Mr. McGregor, a U.S. Army veteran[1] and gun
3  collector, situated himself and several firearms in the living room. Mrs. McGregor threatened to
4  summon the police. Mr. McGregor responded that he would shoot the police and then himself.

5  Mrs. McGregor, fearing for her safety and that of her husband, drove to her municipality's
6  police station, the Marina Department of Public Safety. She told police officers what had happened.
7  Leaving Mrs. McGregor at the station with Officer Sales, several officers (led by Sargent Duffey
8  and Officer Basa) went to the McGregor residence. The deployed officers occasionally telephoned
9  Sales, who would in turn ask Mrs. McGregor questions for them or relay information to her. The
10 police surrounded the McGregors' apartment and made numerous phone calls to Mr. McGregor, who
11 they believed to be still inside the apartment because his truck was parked outside. Mr. McGregor
12 did not answer any of the calls.

13 After a period of time, Mr. McGregor exited the apartment, ostensibly to obtain cigarettes
14 from his truck, though he was aware of the police presence and assumed they had been summoned
15 by Mrs. McGregor. Mr. McGregor left his guns and his wallet in the apartment but did bring his
16 keys. Upon making contact with Mr. McGregor, Basa ordered him to the ground. He did not
17 comply, and instead advanced towards her while screaming "Shoot me!" Officers tackled and
18 subdued Mr. McGregor, eventually handcuffing him and placing him in a squad car.

19 The police then searched the McGregors' apartment and Mr. McGregor's truck. There was
20 conflicting testimony as to certain aspects of this search. According to Basa, she telephoned Sales to
21 ask him about on-site storage units and vehicles in addition to Mr. McGregor's truck. Basa stated
22 that while she was on the line with Sales, Sales questioned Mrs. McGregor and Basa heard Mrs.
23 McGregor say that she wanted everything searched and that she didn't want any guns in Mr.
24 McGregor's truck.[2]

---

26  [1] Mr. McGregor served in the Army for twenty-four years, primarily in explosive
ordinance disposal. At the time of this incident, his civilian occupation was in the same field.

28  [2] Sales did not testify at the evidentiary hearing and does not recall the specifics of his
communications with Basa and Mrs. McGregor. *See* Casciano Decl. ¶ 8. Duffey testified that Basa
told him that Mrs. McGregor consented to a search of Mr. McGregor's truck.

ORDER DENYING MOTION TO SUPPRESS EVIDENCE—No. CR-05-00403 RMW
JAH                                                         2

1    Mrs. McGregor testified that the police did not ask her for permission to search the apartment
2 or the truck, and she did not say she was worried about guns in Mr. McGregor's truck.  She did say
3 she wanted all his guns away from him.  Sales told her that Mr. McGregor had given his consent to a
4 search of his truck.  Sales also told Mrs. McGregor that the police would, under the circumstances,
5 have to remove all guns from the premises; Mrs. McGregor said that was fine.  Mrs. McGregor was
6 adamant in her testimony and openly hostile towards the prosecuting attorney for no apparent
7 reason.
8    The police did search Mr. McGregor's truck.  In the bed of the truck, under a locked camper
9 shell with tinted windows and protected by an alarm system, the police found a number of
10 containers.  Opening these containers, the police discovered various items of military hardware that
11 Mr. McGregor had collected.  The silencer was found inside a closed metal ammunition canister; the
12 explosive device was within a wooden crate labeled "EXPLOSIVE" and "DANGEROUS".  (Duffey
13 testified that he wasn't sure if he could read this through the window tinting, but by pressing his face
14 and a flashlight against the window, he could discern the containers themselves.)
15    The police took Mr. McGregor to a hospital for evaluation.  Medical personnel determined
16 that he was drunk and angry, but not in immediate need of psychiatric care.  The police then
17 retrieved him, and he was charged with multiple violations of California law including spousal
18 battery and public intoxication.  As a result of the incident, Mrs. McGregor obtained a restraining
19 order against Mr. McGregor and has had no contact with him since his arrest.  The only charges
20 pending before this court are for possession of a silencer and a missle, each in violation of 26 U.S.C.
21 § 5861(d).

22 **B.  Mr. McGregor's Truck**

23    Mr. McGregor purchased his truck in 2004 by trading in a vehicle he owned before his
24 marriage to Mrs. McGregor and making a thousand-dollar down payment.  At the time, the couple
25 was separated and intended to file for divorce.  Mrs. McGregor did not sign anything for Mr.
26 McGregor's financing of the truck.  The title was taken in his name only.  The couple got back
27 together after the purchase of the truck.  Payments on the truck were made out of a bank account that
28 was Mr. McGregor's before the marriage, although Mrs. McGregor was added to the account shortly

1  after they were married and Mr. McGregor's wages during the marriage went into this account. It
2  appears that the couple commingled funds in this account.

3  Mrs. McGregor, however, testified that she considered the truck Mr. McGregor's separate
4  property. (She also stated that the couple usually alternated paying joint expenses, but she always
5  used her own money for her personal expenses, such as clothing and craft supplies.) She only drove
6  the truck once, and then because Mr. McGregor wanted her to be able to drive it if the need ever
7  arose. She did not have keys to the truck. If the couple went to the grocery store, Mr. McGregor
8  would send her inside upon their return home and he would unload the groceries from the truck
9  without her help. Mr. McGregor, however, testified that he would have given Mrs. McGregor the
10  keys if she had ever asked.

## II. ANALYSIS

12  "In order to establish the validity of a consent to search, the government bears the heavy
13  burden of demonstrating that the consent was freely and voluntarily given." *United States v. Chan-*
14  *Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997), *see Schneckloth v. Bustamonte*, 412 U.S. 218, 222
15  (1973) (voluntary consent must be shown by a preponderance of the evidence). Whether consent to
16  search was voluntarily is "to be determined from the totality of all the circumstances." *Schneckloth*,
17  412 U.S. at 227.

18  Authority to consent to a search may be either actual or apparent; either is sufficient under
19  the law. *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1999). Actual authority may be proven by
20  "persuasive evidence of both shared use *and* joint access to or control over a searched area" by the
21  one giving consent. *Id*. A person has apparent authority to consent to a search if the officers who
22  conduct the search reasonably believe that person has actual authority to consent. *United States v.*
23  *Fultz,* 146 F.3d 1102, 1105 (9th Cir. 1998).

24  Justice Thurgood Marshall, though dissenting, provided a useful synopsis of the Fourth
25  Amendment as it applies to cars and containers:

26  > It is well established that an individual has but a limited expectation of privacy in the
>   interior of his car. A car ordinarily is not used as a residence or repository for one's
27  > personal effects, and its passengers and contents are generally exposed to public
>   view. See *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (plurality opinion).
28  > Moreover, cars "are subjected to pervasive and continuing governmental regulation
>   and controls," *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976), and may be

ORDER DENYING MOTION TO SUPPRESS EVIDENCE—No. CR-05-00403 RMW
JAH                                                        4

> seized by the police when necessary to protect public safety or to facilitate the flow of traffic, *see id.*, at 368-369.
>
> In contrast, it is equally well established that an individual has a heightened expectation of privacy in the contents of a closed container. *See*, *e.g., United States v. Chadwick*, 433 U.S. 1, 13 (1977). Luggage, handbags, paper bags, and other containers are common repositories for one's papers and effects, and the protection of these items from state intrusion lies at the heart of the Fourth Amendment. U.S. Const., Amdt. 4 ("The right of the people to be secure in their . . . papers, and effects, against unreasonable searches and seizures, shall not be violated"). By placing his possessions inside a container, an individual manifests an intent that his possessions be "preserve[d] as private," *Katz v. United States*, 389 U.S. 347, 351 (1967), and thus kept "free from public examination," *Chadwick*, 433 U.S. at 11.
>
> The distinct privacy expectations that a person has in a car as opposed to a closed container do not merge when the individual uses his car to transport the container. In this situation, the individual still retains a heightened expectation of privacy in the container. See *Robbins v. California*, 453 U.S. 420, 425 (1981) (plurality opinion); *Arkansas v. Sanders*, 442 U.S. 753, 763-764 (1979). Nor does an individual's heightened expectation of privacy turn on the type of container in which he stores his possessions.

*Florida v. Jimeno*, 500 U.S. 248, 252-53 (1991) (Marshall, J., dissenting) (citations shortened).

**A.  Did Mrs. Mcgregor Give Consent to the Search of the Truck and Containers Therein?**

Mrs. McGregor's and Basa's accounts of what exactly the police and Mrs. McGregor said to each other about Mr. McGregor's guns and truck differed in significant respects. Neither witness was obviously untruthful, and each appeared to sincerely believe what she said. The court concludes that each witness most likely described events as she remembered them, but with Mrs. McGregor's emotions running high on the night of the incident, Basa's recollection of what was said is probably the more reliable.

The court finds that the police did discuss Mr. McGregor's truck with Mrs. McGregor and that she was adamant that she wanted any guns removed from the residence, storage unit and truck. It was, therefore, reasonable under the circumstances for the police to assume that she was authorizing the police to search and remove all firearms from those locations. She gave an apartment key to the officers and explained where the key to the storage unit was.

The scope of consent given for a search is what a reasonable person in the circumstances would have understood that consent to entail. *Florida v. Jimeno*, 500 U.S. 248, 249 (1991). For example, consent to search a car for illegal drugs would generally include consent to search a "paper bag lying on the car's floor" but not "the breaking open of a locked briefcase within the trunk." *Id*. at 251-52. Providing keys to a residence is evidence of consent to a search, particularly when coupled

ORDER DENYING MOTION TO SUPPRESS EVIDENCE—No. CR-05-00403 RMW
JAH                                            5

with a request for police to retrieve items from within or assist in their retrieval. *United States v. Gilbert*, 774 F.2d 962, 963 (9th Cir. 1985) (per curiam); *United States v. Donlin*, 982 F.2d 31, (1st Cir. 1992). Under the circumstances of this case, Mrs. McGregor's request for the police to take away all of Mr. McGregor's guns would have been interpreted by a reasonable person to include her consent to search his truck and any container therein that could potentially contain a firearm.

**B.  Did Mrs. Mcgregor Have Actual Authority to Consent to the Search of the Truck?**

If two persons have "common authority" over property, police may search the area with the consent of one person and use evidence obtained against the other. *United States v. Matlock*, 415 U.S. 164, 170-71 (1974). Common authority, however, is not equivalent to ownership:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n.7 (citations omitted). For example, a male driver has been found to lack authority to consent to a search of a female passenger's purse. *Welch*, 4 F.3d at 764; *see also South Dakota v. Zachodni*, 466 N.W.2d 624, 628 (S.D. 1991) (husband lacks "common authority or joint control over his wife's purse").

As a matter of California law, the truck may or may not have been considered community property. The fact that payments on the truck were made out of an account which included deposits of Mr. McGregor's wages earned during the marriage tends to suggest the truck was, at least in part, community property.[3] However, the court cannot consider just "the mere property interest" Mrs. McGregor had in the truck when determining her authority to consent to its search; the question is rather whether Mrs. McGregor had "joint access or control for most purposes." *See Matlock*, 415 U.S. at 171 n.7. Mrs. McGregor only drove the truck once, did not have keys to it, and considered it to be wholly Mr. McGregor's. Under the specific circumstances of the McGregor's marriage, it

---

[3] Other facts such as the registered owner being Mr. McGregor, the almost exclusive use of the truck by Mr. McGregor, and the initial down payment coming from Mr. McGregor tend to support a finding that the truck was his separate property.

ORDER DENYING MOTION TO SUPPRESS EVIDENCE—No. CR-05-00403 RMW
JAH                                                                    6

appears the McGregors had determined between themselves that the truck was solely Mr. McGregor's domain. Mrs. McGregor lacked "joint access or control for most purposes" and therefore lacked actual authority to consent to the search.

**C. Did Mrs. Mcgregor Have Apparent Authority to Consent to the Search of the Truck?**

The Ninth Circuit set forth the test for determining whether an individual possesses apparent authority to give consent for a search in *United States v. Dearing*:

> First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent-giver's use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority?

9 F.3d 1428, 1429-30 (1993) (citations omitted). In the instant case, the answer to all three questions is "yes."

First, the officers apparently believed that Mrs. McGregor, as the wife of Mr. McGregor, would have access to and some degree of control over her husband's truck. Second, it was objectively reasonable for the officers to believe this under the circumstances—Mr. and Mrs. McGregor were, after all, married. Although married people often refer to a vehicle using terms such as "mine," it is not uncommon for a married person to have keys to and occasionally drive the vehicle primarily driven by his or her spouse. Third, had the police's assumptions been true, Mrs. McGregor would have possessed actual authority to consent to a search of Mr. McGregor's truck; she would have satisfied the requirement of "joint access or control for most purposes." Mrs. McGregor, therefore, had apparent authority to consent to the search of Mr. McGregor's truck.[4]

**D. The Containers Within the Truck**

"[A]uthority to consent to a search of property does not necessarily translate into authority to search specific containers." *United States v. Ruiz*, 428 F.3d 877, 882 (9th. Cir. 2005). However, in

---

[4] The day after the hearing on the motion to suppress, the Supreme Court decided *Georgia v. Randolph*, 126 S. Ct. 1515 (Mar. 22, 2006). *Randolph* does not represent a great change in Fourth Amendment jurisprudence and does not invalidate any of the cases upon which the parties relied in their briefs. In *Randolph*, the Court stated that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id*. at 1527. Although it is not clear where Mr. McGregor was during the search of his truck, there is no evidence that he objected, and therefore his wife's consent is sufficient under *Randolph*.

the circumstances here, Mrs. McGregor's apparent authority extended to the containers in the back of her husband's truck. Under *Dearing*, it is generally reasonable for the police to assume spouses have common authority over their property. This is not true for all kinds of property, but here there is nothing about the military containers in Mr. McGregor's truck that should have caused the police to question whether they were items of property under control of both spouses. The containers did not appear to be a personal item, such as a woman's purse or personal luggage, over which a spouse would not have access and here Mrs. McGregor gave, or at least reasonably appeared to give, consent to search.

### III.  ORDER

For the foregoing reasons, the court denies the defendant's motion to suppress evidence.

DATED:      4/17/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Carlos Singh          carlos.singh@usdoj.gov

**Counsel for Defendant:**

Cynthia Lie          cynthia_lie@fd.org

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     4-17-06                    /s/ JH
                                **Chambers of Judge Whyte**